PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 97-6729

D. C. Docket No.95-CV-2380

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
07/20/98
THOMAS K. KAHN
CLERK

ARTHUR ROSS,

Plaintiff-Appellant,

versus

RHODES FURNITURE, INCORPORATED, an Alabama Corporation, d.b.a.
Marks Fitzgerald,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Alabama

**(July 20, 1998)**

Before ANDERSON and BIRCH, Circuit Judges, and PAINE*, Senior
District Judge.

_____

*Honorable James C. Paine, Senior U.S. District Judge for the
Southern District of Florida, sitting by designation.

PAINE, Senior District Judge:


Arthur Ross appeals the district court's setting aside a jury

verdict that awarded him more than thirty seven thousand dollars in

back pay.  We reverse and remand with instructions to the district

court to reinstate and enter judgment on the jury's verdict. First, the record on appeal is insufficient to permit an evaluation of whether the trial court erred when it granted the defendant's renewed motion for judgment as a matter of law. Second, our de novo review of the trial testimony convinces us that the jury could have reasonably disbelieved the defendant's proffered reasons for firing Ross.

In 1987, Ross, who is an African-American, was hired by Marks Fitzgerald to help deliver furniture. In 1990, Ross began working for Rhodes Furniture when that company acquired Marks Fitzgerald. Ross performed well and climbed the company ladder at Rhodes, ultimately rising to the position of delivery manager. R. 2-26-27. Ross was never disciplined before he was accused of and fired for soliciting tips. R. 2-30.

On December 23, 1993, Ross was supervising the loading dock at Rhodes's warehouse. He noticed that customers' tipping of employees for loading furniture was slowing down operations. Ross testified that, to remedy the situation, he made a tip box and placed it near the loading dock. R. 2-31-33. Ross further testified that he immediately removed the box from its perch outside the loading dock when the receptionist informed him that a customer had complained about the tip box. R. 2-35.

2

Ross finished work on December 23rd and went on Christmas vacation. When he returned a week later to pick up his paycheck, Ross noticed that Ricky Mann (Mann), a white male, was serving as the delivery manager.  Until that time, Mann had been a driver for Rhodes and, at times, under Ross's supervision.  On January 5, 1994, Ross returned from vacation to find that he was fired and that Mann had replaced him. R.2-37, 39.

Upon being fired, Ross filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC).  Ross claimed that he was fired because he is black.  He also charged that tip solicitation was Rhodes's pretext for discriminatory discharge. Pl.'s Trial Ex. 2 (Ross's EEOC charge).  The EEOC issued Ross a right to sue letter. Ross then filed suit in the United States District Court for the Northern District of Alabama, seeking relief under Title VII and Section 1981.

Ross alleged that "[t]he defendant discriminated on the basis of race against the plaintiff with respect to discharge, discipline[,] and other terms of employment."  Pl.'s Compl. at 2, ¶6.  The trial judge denied Rhodes's motion for summary judgment, and the case went to trial. Upon deliberation, the jury awarded Ross $37,341.85 in back pay.

After moving for and receiving an extension of time, Rhodes filed a renewed motion for judgment as a matter of law under Rule

3

50(b).  Rhodes also moved for a new trial.  Apparently, Ross opposed neither motion.  See Trial Docket.  Chief Judge Pointer granted Rhodes's renewed motion for judgment as a matter of law, set aside the jury's verdict, and entered judgment for Rhodes.  He denied as moot Rhodes's motion for a new trial.  See Trial Docket No. 54.  Ross appealed.

At oral argument to the appellate panel, counsel agreed that Rhodes moved for judgment as a matter of law both at the close of Ross's case and at the close of all the evidence.[1]  The parties did not, however, identify what grounds Rhodes offered in support of its pre-verdict motions under Rule 50(a).  The record on appeal is also silent on this point.[2]  The abbreviated record prevents any

---

[1] In the present case, the Plaintiff challenges the entry of jnov on the merits.  Accordingly, whether the Plaintiff's failure to object to Defendant's Rule 50(b) motion on the ground that the basis of Defendant's Rule 50(b) motion was waived by Defendant's inadequate Rule 50(a) motion, constitutes waiver of Plaintiff's right to challenge the district court's entry of jnov pursuant to Defendant's Rule 50(b) motion, is not before this court because the Plaintiff has not raised the waiver issue on appeal. Cf. Williams v. Runyon, 130 F.3d 568 (3d Cir. 1997) (holding that where a party did not object to a movant's Rule 50(b)motion specifically on the grounds that the issue was waived by an inadequate Rule 50(a) motion, the party's right to object on that basis is itself waived); Whelan v. Abell, 48 F.3d 1247 (D.C. Cir. 1995) (holding that failure to assert an objection to a Rule 50(b) motion constitutes waiver of the objection).

[2] At the close of Ross's evidence, defense counsel said, "Your Honor, I think we have a motion ready."  R. 2-155. A discussion was then held off the record. Id.  Rule 50(a)(2) provides:

> Motions for judgment as a matter of law may
> be made at any time before submission of the
> case to the jury.  Such a motion shall

meaningful appellate review of whether Ross was afforded his Seventh Amendment right to cure evidentiary deficiencies before his case went to the jury. Rule 50 was designed to protect that right, and therefore, we adhere to its procedural mandates. See Crawford v. Andrew Sys., Inc., 39 F.3d 1151, 1154 (11th Cir. 1994)(holding that a district judge has no authority to grant a Rule 50(b) motion when no Rule 50(a) is made) and see also Sims' Crane Serv., Inc. v. Ideal Steel Prods., 800 F.2d 1553, 1557 (11th Cir.1986) (noting our attention to both the purpose and the wording of Rule 50(b)).

Rule 50 motions must made on the record. That rule is not unique to this circuit. See Keith v. Truck Stops Corp. of Am., 909 F.2d 743, 744 (3rd Cir. 1990) ("the better practice would be for such motions to be made on the record"). An adequate record may allow us to excuse technical non-compliance with Rule 50. See MacArthur v. University of Texas Health Ctr., 45 F.3d 890, 898 (5th Cir. 1995). More importantly, an adequate record on appeal reveals whether a plaintiff's Seventh Amendment rights have been ambushed. It also controls the evidentiary standard we apply when reviewing a district court's decision to set aside a jury verdict. The

specify the judgment sought and the law and facts on which the moving party is entitled to the judgment.

In this case, the record on appeal does not specify the judgment sought and the law and facts on which Rhodes should have been entitled to the judgment.

5

standard of review is de novo.  General American Life Insurance Company v. AmSouth Bank, 100 F.3d 893, 899 (11th Cir. 1996); Bateman v. Mnemonics, 79 F.3d 1532 (11th Cir. 1996)(district judge's resolution of post trial motions renewed de novo).

When reviewing a trial court's resolution of a Rule 50(b) motion, we compare the grounds originally argued by the movant in its Rule 50(a) motion with those cited by the trial court in granting a renewed motion for judgment as a matter of law.  See National Indus., Inc. v. Sharon Steel Corp., 781 F.2d 1545(11th Cir. 1986); Sulmeyer v. Coca Cola Co., 515 F.2d 835, 845-46 (5th Cir. 1975).  If the grounds argued in a motion under Rule 50(a) are "closely related" to those argued in a Rule 50(b) motion, then setting aside a jury's verdict is no surprise to the non-movant. No Seventh Amendment right is ambushed.  National Indus., Inc. v. Sharon Steel Corp., 781 F.2d at 1549-50.  But if the new and old grounds vary greatly, then a trial judge may not rely on the new grounds to set aside the jury's verdict.  See Sulmeyer v. Coca Cola Co., 515 F.2d at 845-46.  If they do vary greatly and the trial court relies upon the new grounds to set aside the jury's verdict, we will reverse.  See id.


In National Industries, the record on appeal enabled us to conclude that the new grounds in the Rule 50(b) motion constituted no surprise to the non-movant because the new and old grounds were "closely related."  See National Indus., Inc. v. Sharon Steel

6

<u>Corp.</u>, 781 F.2d at 1549. In this case, however, we are unable to evaluate whether the grounds in Rhodes's Rule 50(a) motions were substantially different from those asserted in its Rule 50(b) motion. Hence, we cannot ascertain if this appeal is more like <u>National Industries</u>, where "[t]he difference . . . between the matters raised in the motion for judgment n.o.v. and the earlier motion is not so great[,]" or whether it is akin to <u>Sulmeyer v. Coca Cola Company</u> and <u>Wilson v. Attaway</u>, 757 F.2d 1227 (11th Cir. 1985), where the matters varied greatly and required reversal.

We see no difference between a record that omits any mention of a Rule 50(a) motion and one that is mute concerning the grounds argued in support of the Rule 50(a) motion. Both deficiencies go to the heart of our concerns that a plaintiff's Seventh Amendment rights not be ambushed and that a plaintiff be allowed to cure evidentiary deficiencies before the jury retires.

The record before us makes it impossible to determine whether the trial court should be affirmed under the "flexible approach" we took in <u>National Industries</u> or whether we should follow a stricter approach as we did in <u>Sulmeyer</u> and <u>Wilson</u>. Accordingly, we must act in an abundance of caution towards preserving the sanctity of a jury's verdict and vacate the trial judge's decision. <u>Cf.</u> <u>Dunn v. H.K. Porter Co., Inc.</u>, 602 F.2d 1105, 1113 (3rd Cir. 1979) (vacating judgment of district court because "[t]he record before

7

us is not sufficiently complete to permit adequate appellate review of the district court's action."). Instead of culling the record for substantial evidence to support the verdict (as we would normally do), we will look for any evidence that would sustain the jury's decision. We employ the "any evidence" standard because we are unable to ascertain whether Ross was sandbagged by new arguments in Rhodes's motion under Rule 50(b). Cf. Wilson v. Attaway, 757 F.2d at 1237 (applying the "any evidence" standard when no Rule 50(a) motion was made).

Applying this "any evidence" standard, we conclude that the jury verdict was supported by the evidence, and therefore, it must be reinstated. We review de novo a district court's determination of a Rule 50 (b) motion. See, e.g., Combs v. Plantation Patterns, 106 F.3d 1519, 1526 (11th Cir. 1997). In doing so, "we must consider all the evidence in the light most favorable to [the nonmovant] and determine 'whether or not reasonable jurors could have concluded as this jury did based on the evidence presented.'" Id. (quoting Quick v. Peoples Bank, 993 F.2d 793, 797 (11th Cir. 1993)).

In his quest for relief, Ross must clear several evidentiary hurdles. He must make a prima facie case. Id. at 1528. Ross made a prima facie case for discriminatory discharge. As an African-American, he is a member of a protected class. Given the glowing

8

evaluations Ross received prior to being discharged, he was certainly qualified to serve as Rhodes's delivery manager. Rhodes fired Ross and replaced him with a non-minority, Ricky Mann. That is a prima facie case. See Jones v. Lumberjack Meats, Inc., 680 F.2d 98, 101 (11th Cir. 1982)(iterating the elements of discriminatory discharge).

Second, once Rhodes produced legitimate non-discriminatory reasons for its adverse employment action, Ross must prove his case. Combs v. Plantation Patterns, 106 F.3d at 1528. Rhodes satisfied its intermediate burden of production when it claimed that Ross was fired for soliciting tips. Ross then had to produce evidence from which the jury could have reasonably inferred that Ross was fired because he is black. See id.

Ross could employ either of two methods to carry his ultimate burden of proof. He could adduce evidence that might directly establish discrimination. Alternatively, he could point to enough evidence to permit the jury to reasonably disbelieve Rhodes's proffered reason that it fired Ross for soliciting tips. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 256, 101 S. Ct. 1089, 1095, 67 L.Ed.2d 207 (1981). We must determine if Ross succeeded under either method.

9

Reviewing the first "direct" method--whether Ross's evidence could have persuaded the jury that discrimination motivated his firing--the court examines whether Ross produced any evidence beyond his prima facie case. Ross's prima facie case may certainly be considered in determining whether he carried his ultimate burden. See Combs v. Plantation Patterns, 106 F.3d at 1528 (citing Burdine). Although a plaintiff must both present a prima facie case and show pretext, the showing of pretext need not necessarily involve further evidence; the evidence in a prima facie case might be strong enough to also show pretext. See id. at 1530. In this case, however, Ross needed additional evidence beyond that which established his prima facie case. He needed trial testimony if he was to carry his burden and survive Rhodes's Rule 50 motions.

Ross could carry his burden via the second method by producing "any evidence that, if believed, sustains his burden of proof[,]" Swanson v. General Servs. Admin., 110 F.3d 1180, 1185 (5th Cir. 1997), "to demonstrate the existence of a genuine issue of fact as to the truth of" Rhodes's explanation that it fired him for soliciting tips. Combs v. Plantation Patterns, 106 F.3d at 1529. If Ross succeeded, he was entitled to survive Rhodes's Rule 50 motions. See Carter v. City of Miami, 870 F.2d 578, 581 (11th Cir. 1989). Applying the "any evidence" standard required by Wilson v. Attaway, we conclude that Ross succeeded via the second method: he

10

presented evidence which permitted the jury to reasonably disbelieve Rhodes's proffered reason.

One segment of Ross's trial testimony is especially compelling. Ross testified that Ron Kirkpatrick--the supervisor who was instrumental in Rhodes's decision to fire Ross for soliciting tips--had himself received tips. R. 2-48 at ¶¶ 15-17. Yet Kirkland decided to fire Ross, an African-American, and replace him with a non-minority. The jury could have chosen to reject Kirkland and Sweeney's testimony, i.e., that they decided to fire Ross for soliciting tips, as untrue. Although we hold that this testimony satisfies Wilson v. Attaway's "any evidence" standard, Ross presented additional evidence, which satisfies the more demanding "substantial evidence" standard. Ross further testified that sometime prior to his being fired, Kirkland pointed to Ross and said "You see that one over there, I am going to get rid of him." R. 2-55 at ¶¶ 21-23. Kirkland made that statement to a white man. Id. at ¶¶ 24, 25. Ross contends that Kirkland's reference to "that one over there" evinced racial animus by a decision maker who would ultimately fire him.

Ross also testified that sometime in 1990, Kevin Sweeney said "I never seen as many blacks in this building except in a Tarzan movie." R. 2-117, at ¶¶ 4-7. Even though Kirkland and Sweeney made their comments long before they fired Ross, that did not

11

prevent Ross from using these statements as evidence to persuade the jury that it should disbelieve Rhodes's proffered reason. See Turlington v. Atlanta Gas Light Co., 135 F.3d 1428, 1436 (11th Cir. 1998) (citing Allen v. County of Montgomery, 788 F.2d 1485, 1488 (11th Cir. 1986)).

The district judge rejected the Tarzan remark as an "isolated general racial remark," unable to aid Ross in proving his case. The trial judge erred. Although we have repeatedly held that such comments are not direct evidence of discrimination because they are either too remote in time or too attenuated because they were not directed at the plaintiff, see, e.g., Evans v. McClain of Ga., Inc., 131 F.3d 957 (11th Cir.1997), we have not held that such comments can never constitute circumstantial evidence of discrimination. Other Courts of Appeals have indicated that such comments may provide circumstantial evidence to support an inference of discrimination. E.g., Walden v. Georgia-Pacific Corp., 126 F.3d 506, 521 (3rd Cir. 1997) ("Although stray remarks by non-decisionmakers alone are insufficient to establish discriminatory intent, we have held that such remarks can still constitute evidence of the atmosphere in which the employment decision was carried out.").

Ross's case relied on circumstantial evidence. Even the district judge so concluded. That is clear from the trial court's

12

use of <u>McDonnell Douglas</u>'s burden-shifting analysis, which does not apply in direct evidence cases. <u>See</u> <u>Massaro v. Mainlands Sects. 1&2 Civic Ass'n, Inc.</u>, 3 F.3d 1472, 1476 n.6 (11th Cir. 1993). Because Ross's case turned on circumstantial evidence, the proper inquiry is whether Sweeney's "Tarzan" remark and Kirkland's remark, when read in conjunction with the entire record, are circumstantial evidence of those decisionmakers' discriminatory attitude. If so, the court must then determine whether such circumstantial evidence, along with other evidence (including Ross's prima facie case), might lead a reasonable jury to disbelieve Rhodes's proffered reason for firing Ross. We conclude that these comments, considered together with the fact that Kirkland had received tips, support the jury's rejecting Rhodes's proffered explanation for firing Ross.

In our view, Ross's evidence created a genuine issue of fact concerning the truth of Rhodes's proffered reason. The jury could have found that the tipping episode was a pretext for firing Ross. That is enough because, consistent with <u>Combs</u>, once Ross was able to present evidence from which a jury reasonably could have disbelieved Rhodes' proffered explanation for its action, it is the jury's job (not ours) to decide whether Rhodes acted with discriminatory intent. <u>See</u> <u>Combs v. Plantation Patterns</u>, 106 F.3d at 153 ("[O]ne way a plaintiff may succeed in establishing discrimination is by showing that the employer's proffered

13

explanations are not credible. When that happens, the plaintiff may or may not ultimately prevail in the litigation, because the factfinder may or may not choose to make the permissible inference of discrimination."). Here, the jury made that inference, and it was a permissible one. Because Ross presented enough evidence from which the jury could find pretext, the jury's final, permissible inference as to the question of Rhodes's intent should be left undisturbed. Therefore, the judgment of the district court is REVERSED and the case is REMANDED to the district court with instructions to reinstate the jury verdict and to enter judgment in accordance therewith, with allowance of interest from the date the jury rendered its verdict.