[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 2, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-15989
Non-Argument Calendar

_____

D. C. Docket No. 03-02983-CV-BE-E

CLEMENT TRUSS,

Plaintiff-Appellant,

versus

FRANCIS J. HARVEY,
Secretary of the United States
Department of the Army,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(May 2, 2006)**

Before BIRCH, DUBINA and HULL, Circuit Judges.

PER CURIAM:

Clement Truss appeals the district court's grant of summary judgment to his employer on his claim of disparate treatment based upon intentional race discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-16. Because Truss did not present sufficient evidence from which a jury could have reasonably inferred that he was not offered the position because he is black, we AFFIRM the district court's grant of summary judgment.

## I. BACKGROUND

Represented by counsel, Truss, an African-American man, filed a complaint against his employer, R. L. Brownlee, the Acting Secretary of the United States Army ("the Secretary"),[1] pursuant to Title VII, § 2000e-16, alleging that he was discriminated against because of his race. Truss alleged, inter alia, that: (1) he was employed with the Anniston Army Depot as a Motor Vehicle Operation Leader ("MVOL"); (2) in May 2002, he applied for the position of Motor Vehicle Operator (Materials Handler) Supervisor ("MVOS"), for which he was qualified; (3) he was referred, but not selected, for the position; (4) the position was filled by Douglas Gibson, a white man; and (5) his nonselection for the position was based upon intentional racial discrimination. The Secretary answered and filed a motion for summary judgment. In support, the Secretary submitted the transcript of the

---

[1]Francis J. Harvey automatically was substituted as the defendant in this case when he became the current Secretary of the Army. See Fed. R. App. P. 43(c)(2).

Department of the Army's Civil Personnel Management Service's fact-finding conference.

Truss testified at the conference that he had been employed as an MVOL at the Anniston Army Depot in Alabama since August 1997. Truss received "outstanding" performance ratings in this position. His immediate supervisor was Larry Tumlin, who was then the MVOS. When Tumlin became Division Chief in 2002, the MVOS position became available. The job description for the MVOS position dictates that the candidate exercise "full supervisory responsibility over work operations" over employees in MVOS positions, which were described as a "non-supervisory grade level." R2, Exh. 6 at unnumbered 2. As the selecting-supervisor with responsibility for filling the position, Tumlin created a Matrix system to select the supervisor from a list of qualified applicants. He considered criteria such as supervisory experience, practical experience, having a commercial driver's license ("CDL"), and veteran status. Truss and Gibson, along with thirty others, applied for that position.

Truss stated that Tumlin told him that he was not selected for the position because Gibson "came out on top" of the Matrix system and was "the best man." R2, Exh. 1 at 16. Truss, however, did not believe Tumlin's reasons because he felt that he was more qualified than Gibson for the particular position, since he had

3

supervisory experience in that particular department, which Gibson did not. Truss

testified that he believed that his nonselection for the promotion had to do with a

racial incident in 1984 or 1985 in which Tumlin:

> was telling racial jokes in the shower and I . . . turn[ed] and [told] him,
> you know, that I didn't appreciate him doing it. He said, "Okay." So
> I went over to my locker and started getting dried off and getting
> dressed and he came back up to me and said, "I don't care who you go
> see." And at that time I went to see the Director and told him about it
> and he said I didn't have to put up with this. To the best of my
> knowledge he talked to Mr. Tumlin and it hasn't happened since.

Id. at 29. Truss emphasized that "people never forget things like that. I know I

don't." Id. With regard to his experience in comparison to Gibson, Truss stated

> when it comes up for me to get promoted to the [MVOS] job, after
> I'm on the job, in the job, running the job, familiar with everybody, . .
> . every aspect about the job, I knew it, and Larry selected Mr. Gibson
> for that job. Mr. Gibson didn't know the right way of doing things
> because he'd never been back -- He worked in Ammunition like back
> in [t]he eighties I think and there's a lot  . . . [that] had changed, but I
> was in the organization; I knew every move of the organization . . . .
> Looking at the outline on the jobs on the Matrix system that he used, .
> . . everything about it I have out qualified this man except for one
> issue which was . . . supervisory experience. As Supervisor in that
> Ammunition area, there's no one that had more experience than I had.

Id. at 13. Truss further explained he filled in for Tumlin in 2002 as "Acting

Division Chief" on several occasions while Tumlin was out, including for thirty to

forty-five days in 2002. Id. at 37. He also testified that for nine months, between

August 1997 and June 1998, he temporarily supervised ten to thirteen employees

4

and performed the same job duties as required of a person in the MVOS position.

Tumlin testified that he selected Gibson for the position because "[h]e was the best qualified for the position . . . [because] Douglas had more supervisory experience. " Id. at 50. The only category in the Matrix where the scoring differed was supervisory experience. On the Matrix under supervisory experience, Tumlin had written in "'Weeks' with a question mark" based on Tumlin's recollection that Truss had filled in for him in his MVOS position. Id. at 56. Tumlin stated that Douglas "had overall about five years prior supervisory experience and that's the main reason he was selected." Id. at 50.

According to the Matrix, Tumlin assigned 5 points for 1-10 years of experience in each category, 10 points for more than 11 years of experience, and 5 points for having a CDL. Truss scored a total of 55 points on the Matrix, calculated as follows: (1) zero points for supervisory experience, which was "Weeks" only; (2) 5 points for having a CDL; and (3) 50 points for having 21 years of experience in tractor/trailers, handling military equipment, ammunition and explosives, loading and unloading trailers, and forklifts. R2, Exh. 5. at unnumbered 1-2. Gibson scored a total of 60 points, calculated as follows: (1) 5 points for having 5 years of supervisory experience; (2) 5 points for having a CDL; and (3) 50 points for having 20 years of experience in tractor/trailers, handling

5

military equipment, ammunition and explosives, loading and unloading trailers, and forklifts. Id.

Tumlin denied that race was a factor in his decision, but admitted that he told an "off-colored" racial joke "sometime[] in the 1980's," but stated that it did not play a part in his decision and had not happened again. R2, Exh. 1 at 60-61. According to Tumlin, another candidate also scored 55 points, but Tumlin would have picked Truss over that candidate because Truss already was working in Ammunition. Id. at 67. Tumlin acknowledged that he was not aware that Truss had supervised ten to thirteen employees for nine months.

In a deposition, Tumlin admitted that he overcalculated: (1) the number of years of tractor-trailer experience that Gibson had and that he should have assigned Gibson 5 points, instead of 10, for that category; and (2) the number of years of material handling, ammunition and explosives, loading and unloading trailers, and forklift experience that Gibson had, though these errors would not have affected Gibson's matrix score. R2, Exh. 1 at 25-39. He explained that his mistakes were due to errors in reading Gibson's resume. With this new calculation, Gibson's score would have been 55 points, rather than 60. Tumlin further stated that, were he to recalculate Truss's Matrix score, based only on Truss's resume, he would have assigned Truss 30 points, rather than 55. Id.

6

The Secretary submitted other evidence in support of his motion, including

Truss's resume, which stated, <u>inter</u> <u>alia</u>, that, since August 1997, he had worked as

a MVOL, where he:

> served as the technical and administrative supervisor over an
> organizational function or group in the Storage Division, Anniston,
> Ammunition Command, exercising full [s]upervisory [r]esponsibility
> over work operations.  I plan daily, weekly, and monthly work
> schedules and sequence of operations for subordinates.  I establish
> deadlines and priorities . . . .  I determine how many assignments can
> be done currently . . . .   I select workers and assign tasks to be
> performed.  I explain work requirements, methods, and procedures.  I
> instruct subordinates in new procedures . . . .  I review work in
> progress and on completion.  I investigate work-related problems.

R2, Exh. 3 at unnumbered 1.  His resume further provided that, for several days a

year since April 1978, Truss also had worked as a Gunner Chief in Greenville,

Alabama, where his duties included counseling employees on their performance

and developing performance standards.  <u>Id.</u> at unnumbered 2.  Gibson's resume

provided, <u>inter</u> <u>alia</u>, that, between March 1986 and June 1991, he worked as an

"Ammunition Inspection Supervisor" for J and L Associates in Fort McClellan,

Alabama, where he "[s]upervised operation of the Ammunition Supply Point."  <u>Id.</u>,

Exh. 4.

In arguing for summary judgment, the Secretary stated that, even assuming

that Truss could establish a <u>prima</u> <u>facie</u> case of race discrimination, Truss could not

show that the Tumlin's legitimate, nondiscriminatory reason for not promoting

7

Truss was a pretext for race discrimination. He also argued that Truss could not point to any evidence that would render Tumlin's explanation unworthy of belief, noting that Truss failed to list any supervisory experience on his resume, and his only similarly-listed experience was in a lead, not a supervisory, position. He contended that Truss could not establish pretext based on the evidence that Tumlin told an off-color joke more than 15 years prior to the alleged discrimination or that Tumlin miscalculated Gibson's score on the matrix because such evidence did not rebut Tumlin's proffered reason "head on." R1-16 at 10-11.

Truss responded, inter alia, that, based on the evidence that (1) Tumlin miscalculated 5 out of 7 of the categories on Gibson's matrix, and (2) Tumlin made racial jokes in Truss's presence in the 1980's, a jury could disbelieve Tumlin's proffered reason and find that Tumlin purposefully miscalculated the scores to allow Tumlin not to select Truss for the promotion based on his race. After hearing oral argument on the motion, the district court granted summary judgment for the employer. The court determined that Truss had failed to produce any evidence establishing a disparity in qualifications for the position, and, even with the miscalculations, Truss's qualifications were not so superior to Gibson's as "to jump off the page and slap you in the face," since Gibson possessed more supervisory experience than Truss. R1-25 at 4. The court further determined that

8

Truss's additional evidence of pretext, the racial joke made by Tumlin, without more, did not create an issue of material fact on the issue of pretext because it was a one-time incident that occurred 15 years prior to the allegedly discriminatory hiring decision.

## II. DISCUSSION

In his brief on appeal, Truss does not claim that he was more qualified than Gibson, nor does he dispute that Gibson had more supervisory experience than he did. Instead, Truss maintains that, in addition to the evidence establishing his prima facie case of discrimination, Tumlin's miscalculation of the matrix scores and his previous racial joke were enough for a jury to have reasonably inferred that Tumlin's proffered reason (Gibson's superior experience) was a pretext for racial discrimination. He argues that the district court erred by not considering all of the evidence together, including the prima facie evidence, when it concluded that Truss had not met his burden. Furthermore, Truss maintains that it was for the jury to decide whether Gibson's total score on the matrix would have been lower than Truss's if a proper calculation was done, and he points out that supervisory experience was only one of seven categories on the matrix and would be irrelevant if Truss's total matrix score was higher than Gibson's.

We review a district court's grant of summary judgment de novo, viewing

9

the evidence in the light most favorable to the party opposing the motion. Gitlitz v. Compagnie Nationale Air France, 129 F.3d 554, 556-57 (11th Cir. 1997). Federal Rule of Civil Procedure 56(c) states that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).

Pursuant to the three-step procedure developed in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973), for analyzing circumstantial evidence of discrimination, if the plaintiff makes out a prima facie case of discrimination, the employer must rebut that presumption by articulating a legitimate, nondiscriminatory reason for not promoting the plaintiff. Carter v. Three Springs Residential Treatment, 132 F.3d 635, 642-43 (11th Cir. 1998). If the employer successfully proffers a legitimate, nondiscriminatory reason, the plaintiff is left with the burden to show that the employer's offered reasons are pretextual. Id. at 643. We have held that "[t]he employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason

10

at all, as long as its action is not for a discriminatory reason." Nix v. WLCY Radio/Rahall Commc'ns, 738 F.2d 1181, 1187 (11th Cir. 1984). In other words, "[i]f the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it[;] . . . [q]uarreling with that reason is not sufficient." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1088 (11th Cir. 2004) (internal citation omitted). Moreover, we have held that stray comments made by a decisionmaker, "when read in conjunction with the entire record, [may constitute] circumstantial evidence of those decisionmakers' discriminatory attitude[, and, i]f so, the court must then determine whether such circumstantial evidence, along with other evidence (including [the plaintiff's] prima facie case), might lead a reasonable jury to disbelieve [the decisionmaker's] proffered reason." Ross v. Rhodes Furniture, Inc., 146 F.3d 1286, 1292 (11th Cir. 1998).

Here, after the employer satisfied its intermediate burden of production by providing evidence that Gibson was chosen because he had superior experience, Truss had to produce evidence from which the jury could have reasonably inferred that he was not promoted because he was black. See Ross, 146 F.3d at 1290 (characterizing the plaintiff's burden of proof after the defendant proffered a legitimate, nondiscriminatory reason as a requirement "to produce evidence from

11

which the jury could have reasonably inferred that [the plaintiff] was fired because he is black"); see also Nix, 738 F.2d at 1184 (noting that the "ultimate question in a disparate treatment case is not whether the plaintiff established a prima facie case or demonstrated pretext, but whether the defendant intentionally discriminated against the plaintiff" (internal quotations omitted)). Because he did not do so, the district court did not err in granting summary judgment to the Secretary.[2]

First, evidence that Tumlin incorrectly calculated the matrix scores does not dispute, "head on," Tumlin's reason for choosing Gibson. See Wilson, 376 F.3d at 1088. Even though the evidence suggests that Tumlin's proffered reason was based on incorrect information, this scoring error does not establish a genuine issue of material fact that Tumlin's proffered reason was pretext for racial discrimination. See Nix, 738 F.2d at 1187-88. According to Tumlin's admission, Gibson actually outscored Truss in several categories and not just supervisory experience. Second, evidence that Tumlin made a racial joke on one isolated occasion over 15 years prior to the alleged discrimination and was reprimanded for the incident likewise does not establish a genuine issue of fact of material fact that

---

[2]Recently the Supreme Court expressed its disapproval of "[t]he visual image of words jumping off the page to slap you (presumably a court) in the face," which the district court in the instant case used in analyzing the disparity of qualifications between Truss and Gibson. See Ash v. Tyson Foods, Inc., ___ U.S. ___, ___, 126 S. Ct. 1195, 1197 (2006). However, because Truss does not argue on appeal that he was more qualified than Gibson, we need not address the implications of the district court's reliance on such language.

12

Truss was not promoted because he is black, especially in light of the undisputed evidence that Tumlin made no further racial comments, and the comment did not occur in a decisionmaking context. See Saulsberry v. St. Mary's Univ. of Minn., 318 F.3d 862, 867-68 (8th Cir. 2003) (noting that "an isolated, stray comment unrelated to the decisional process" did not establish discrimination).

While the district court may have strayed from the requirement in Ross that it consider Truss's prima facie case along with all of the other evidence in determining pretext, under de novo review, "we review the judgment, not the soundness of the district court's explanation for it."[3] See Collado v. United Parcel Serv., Co., 419 F.3d 1143, 1151 (11th Cir. 2005). Considering all of the evidence together, including evidence establishing Truss's prima facie case, errors in the matrix calculations, and Tumlin's racial joke, which occurred 15 years prior to the alleged discrimination, we conclude that there is insufficient evidence for a jury to have reasonably inferred that Truss was not promoted because he is black. See Ross, 146 F.3d at 1291. Furthermore, even assuming that Truss could establish that Tumlin's reasons for not promoting Truss were untrue or that a correctly calculated matrix would yield a superior score for Truss, there would still be

_____

[3]In its order, the district court, in distinguishing the instant case from Ross, stated that "[i]n Ross, the plaintiff did not rely solely on an isolated racial remark as evidence of discriminatory animus but had other circumstantial evidence sufficient to create an inference of pretext." R1-25 at 5.

13

insufficient evidence that Tumlin acted with the necessary discriminatory animus. See Scott v. Suncoast Beverages Sales, Ltd., 295 F.3d 1223, 1229 (11th Cir. 2002) ("Although a comment unrelated to a termination may contribute to a circumstantial case for pretext . . . , it will usually not be sufficient absent some additional evidence supporting a finding of pretext." (citation omitted)).

## III. CONCLUSION

Because Truss did not present sufficient evidence that the defendant's legitimate, nondiscriminatory reason for failing to promote him was pretextual, the district court did not err by granting summary judgment to the defendant.

**AFFIRMED.**