[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-13158
Non-Argument Calendar
_____

D.C. Docket No. 5:13-cv-00299-RS-CJK

RICHARD LOBERGER,
RAYMOND MILLER,

                                                            Plaintiffs-Appellants,

versus

DEL-JEN INC.,
J&J MAINTENANCE INC.,

                                                            Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(June 25, 2015)

Before MARTIN, ROSENBAUM, and ANDERSON, Circuit Judges.

PER CURIAM:

Richard Loberger and Raymond Miller appeal from the district court's grant of summary judgment in favor of Del-Jen, Inc. ("Del-Jen"), and J&J Maintenance, Inc. ("J&J"), in their employment discrimination and retaliation suit under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623, and the Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.01.  After careful review, we affirm.

## I.

We recite the facts in the light most favorable to Loberger and Miller.  *See Mora v. Jackson Mem'l Found., Inc.*, 597 F.3d 1201, 1203 (11th Cir. 2010) (stating that we "resolve all reasonable factual doubts in favor of the non-movant").  Loberger and Miller were both employed by Del-Jen as certified pest controllers at Tyndall Air Force Base (the "Base") near Panama City, Florida.  Loberger was hired in 1998, Miller in 1997.  Del-Jen provided various services, including pest control, at the Base pursuant to a military contract.  The general duties of a pest controller were to control weeds, insects, and vermin.

In 2012, the military re-bid Del-Jen's contract.  J&J won the bidding and was set to take over on about November 14, 2012.  While the contract previously had been "cost-plus," meaning Del-Jen billed the military for its actual costs plus a markup, the military re-bid it as a "fixed-price" contract.  Generally, fixed-price contracts, which provide a set monthly payment for the provision of services, require contractors to staff projects with fewer employees.

2

In August 2012, Del-Jen informed its employees that J&J would be taking over the Base contract, and it gave them applications to apply with J&J. In October 2012, both Loberger and Miller timely submitted applications for pest-control jobs with J&J. They each had a brief interview with J&J representatives.

At some point during the transition phase (between August and November 2012), Tim Lewis, a Del-Jen employee who had been hired as J&J's new site manager, asked the appellants' immediate supervisor, Robert Bushway, to identify the best pest controllers for J&J to hire. Bushway verbally recommended all five pest controllers in this order: Andy Fox, Doug Bailey, Robert Nowaczyk, Loberger, and Miller. Bushway did not explain to Lewis or J&J his reasons for ranking the pest controllers in that order.

Bushway (then age 67) also applied for a position at J&J and was hired as the lead pest controller. Initially, J&J hired two other pest controllers, Fox (then age 42) and Bailey (then age 51). Soon after, J&J determined that it needed to hire an additional pest controller. Thereafter, J&J also hired Nowaczyk (then age 53). Consequently, of the five pest controllers previously employed by Del-Jen, only Loberger (then age 66) and Miller (then age 63), the oldest pest controllers, were not hired by J&J.

After learning of Nowaczyk's hire on October 23 or 24, the appellants approached Bushway on October 25. Bushway told them, "It will be a hard fight

3

for your job because you will be retiring next year . . . and we want someone with longevity."[1]  According to the appellants' testimony, Bushway was concerned that Loberger and Miller were going to retire soon and that it would be difficult to replace them at a later time.  They understood Bushway as saying that both Bushway and J&J believed that the appellants' age was an issue.

Based on Bushway's October 25 statement, Loberger and Miller filed an internal grievance with their union alleging that they had not been recommended or hired because of their age.  Bushway was provided with a copy of the grievance by both appellants, to which Bushway responded, "Gentlemen, I wouldn't be closing any doors."  On November 13, Del-Jen terminated all of its employees.  J&J took over the next day.

Loberger and Miller filed charges of age discrimination with the Equal Employment Opportunity Commission ("EEOC") in December 2012.  They amended these charges in February 2013.

Nowaczyk left his position with J&J in August 2013.  Both Loberger and Miller applied for the vacancy.  Neither was hired.  Instead, J&J hired Thomas Spragg (then age 53) in September 2013 based on Bushway's recommendation.  Bushway interviewed Spragg but not Loberger or Miller.  Spragg did not have two

---

[1]  There is some ambiguity in the appellants' testimony as to whether Bushway said "next year."  Regardless, the import of the statement is the same—Bushway believed that Loberger and Miller would be retiring soon.  Although Bushway denied making this comment in its entirety, we resolve this factual dispute in favor of the appellants. *See Mora*, 597 F.3d at 1203.  Loberger also testified that Bushway made an essentially identical comment to him the day before.

certifications—"right of way" and "public health"—that were listed as mandatory requirements on the job notice published by J&J. Both Loberger and Miller had these certifications.

## II.

Loberger and Miller filed a joint complaint in the United States District Court for the Northern District of Florida against Del-Jen and J&J. Appellants jointly alleged claims under the ADEA and the FCRA of age discrimination against both defendants and of retaliation against J&J, and Loberger alleged a state-law claim of worker's compensation retaliation against Del-Jen.[2] Only the ADEA and FCRA claims are at issue.[3]

The district court granted summary judgment in favor of Del-Jen and J&J. The court ruled that Del-Jen could not be held liable for any discriminatory acts of Bushway because Bushway's recommendations were for the benefit of J&J, not Del-Jen. As for J&J, the court found that Appellants offered no evidence to rebut J&J's legitimate, non-discriminatory reasons for why it did not hire them. Finally,

---

[2] The ADEA/FCRA retaliation claim was originally pled as against both J&J and Del-Jen, but Appellants since have clarified that the claim is only against J&J. Regarding Loberger's worker's compensation retaliation claim, the district court declined to exercise supplemental jurisdiction and dismissed it without prejudice after granting summary judgment on the remaining claims. Loberger does not challenge this ruling on appeal, so we do not address it further.

[3] We analyze these claims jointly under the ADEA. *See Drago v. Jenne*, 453 F.3d 1301, 1307 (11th Cir. 2006) (retaliation); *Zaben v. Air Prods. & Chems., Inc.*, 129 F.3d 1453, 1455 n.2 (11th Cir. 1997) (discrimination).

the district court granted summary judgment on Appellants' retaliation claims against J&J because Appellants had not presented evidence of a causal connection between their protected activity and the failure to hire them in September 2013. Following entry of final judgment, Loberger and Miller brought this appeal.

### III.

We review a district court's grant of summary judgment *de novo* and resolve all reasonable factual doubts in favor of the non-moving party. *Mora*, 597 F.3d at 1203. Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

At the summary-judgment stage, the judge's function is not to weigh the evidence but to determine if there is a "genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* Therefore, summary judgment may be granted "[i]f the evidence is merely colorable or is not significantly probative." *Id.* at 249-50, 106 S. Ct. at 2511 (citations omitted). We may affirm a district court's grant of summary judgment on any ground supported by the record, even if that ground was not relied on by the district court. *Feliciano v. City of Miami Beach,* 707 F.3d 1244, 1252 (11th Cir. 2013).

### IV.

Appellants' claims are premised on two primary actions:  (1) the failure to hire in October 2012 based on Bushway's allegedly discriminatory rankings (age discrimination against both Del-Jen and J&J); and (2) the failure to hire in September 2013 after Nowaczyk resigned (age discrimination and retaliation against J&J).  We address these distinct but related actions separately.

### A.

### 1.

Initially, we note that Appellants' claims relating to the October 2012 failure to hire are premised almost entirely on the allegedly discriminatory rankings Bushway provided to Lewis and J&J.  Yet Bushway was not acting in a traditional supervisory role for either Del-Jen or J&J at the time.  He was an employee of Del-Jen, in the process of applying for work with, if not already hired by, J&J, but he had not actually begun working for J&J.

Given this ambiguity, the parties dispute at length whether and to what extent the defendants are vicariously liable for Bushway.  The district court found that Del-Jen was not liable because Bushway's recommendations were for the benefit of J&J, not Del-Jen, *see Moham v. Steego Corp.*, 3 F.3d 873, 876-77 (5th Cir. 1993), but Appellants counter that Bushway was a Del-Jen supervisor providing a negative job reference, *see, e.g.*, *Bailey v. USX Corp.*, 850 F.2d 1506,

1509-10 (11th Cir. 1988) (holding that a former employer may be liable under Title VII for retaliatory, negative job references). For its part, J&J asserts that any discriminatory animus held by Bushway in October 2012 was unknown to it but at the same time cites Bushway's reasons for ranking Loberger and Miller last of the pest controllers as its own reasons for not hiring them, when the evidence shows that Bushway did not communicate these reasons to J&J.

Before addressing agency principles and cat's paw liability,[4] however, we first consider whether Appellants have created a genuine issue for trial, assuming that both Del-Jen and J&J could be held liable in these circumstances. If not, we need not resolve issues of vicarious liability.

**2.**

Under the ADEA, it is unlawful for an employer to discharge or otherwise discriminate against an employee who is at least forty years of age on the basis of his age. 29 U.S.C. §§ 623(a)(1) & 631(a). To prevail on an age-discrimination claim against an employer, the plaintiff must prove by a preponderance of the evidence that his age was the "but for" cause of the challenged employment decision. *Mazzeo v. Color Resolutions Int'l, LLC,* 746 F.3d 1264, 1270 (11th Cir.

---

[4] The doctrine of cat's paw liability provides that an employer can be liable "when the decision-maker has no discriminatory animus but is influenced by a subordinate supervisor's action that is the product of such discriminatory animus." *Sims v. MVM, Inc.*, 704 F.3d 1327, 1335 (11th Cir. 2013). In ADEA cases, a plaintiff must show "but-for" causation—that the subordinate's proscribed animus had a "determinative influence on the employer's adverse decision." *Id.* at 1335-36.

2014) (citing *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 177-78, 129 S. Ct. 2343, 2351 (2009)).  A plaintiff may support his ADEA claim through either direct or circumstantial evidence.  *Id.*

When the plaintiff supports his claim with circumstantial evidence, we apply the burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817 (1973).  *Id.*  Under that framework, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination.  *Id.*  To make a *prima facie* showing under the ADEA, a plaintiff generally must demonstrate that he "(1) was a member of the protected age group, (2) was subjected to an adverse employment action, (3) was qualified to do the job, and (4) was replaced by or otherwise lost a position to a younger individual."  *Chapman v. AI Transport,* 229 F.3d 1012, 1024 (11th Cir. 2000) (*en banc*).  If the plaintiff establishes a *prima facie* case, "the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for the challenged employment action."  *Mazzeo*, 746 F.3d at 1270 (internal quotation marks omitted).  A legitimate, non-discriminatory reason is one that might motivate a reasonable employer.  *Chapman*, 229 F.3d at 1030.

If the employer satisfies its burden of proffering a non-discriminatory reason for the challenged decision, the plaintiff then has the opportunity to demonstrate that the proffered reason was pretextual, "which merges with the plaintiff's

ultimate burden of persuading the court that the employer intentionally discriminated against [him]." *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146-48, 120 S. Ct. 2097, 2108-09 (2000). To show pretext, a plaintiff generally must "demonstrate[] such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (internal quotation marks omitted). A plaintiff is not allowed to recast an employer's reason or quarrel with its wisdom, "but must meet it head on and rebut it." *Wilson v. B/E Aerospace, Inc.,* 376 F.3d 1079, 1088 (11th Cir. 2004). "If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim." *Chapman,* 229 F.3d at 1024-25.

### 3.

Appellants have established a *prima facie* case of age discrimination. They both were over forty years old, they were not hired for a position for which they applied and were qualified, and younger individuals were hired for the position. *See Chapman,* 229 F.3d at 1024. Thus, the burden of production shifted to the

employer to articulate a legitimate, non-discriminatory reason for the failure to hire Appellants.  *Mazzeo*, 746 F.3d at 1270.

Bushway explained his reasons for ranking Loberger and Miller last of the five pest controllers as follows:  (a) Loberger was a "very hard worker" who preferred working in paved areas, but he did not enjoy lawn & ornamental ("L&O") work—most of the pest control work at the Base was L&O work, according to Bushway—or do it well, which showed in his zone and required others to help out;  (b) Miller was not a hard worker and tended to socialize, making him inefficient compared to the other pest controllers; Miller's L&O work "left much to be desired" and was the source of complaints from users of the areas for which Miller was responsible; and Miller was disrespectful to Bushway and others.[5]  J&J added that it simply hired fewer pest controllers than had been employed by Del-Jen due to the nature of its contract.

Although Bushway's evaluations are subjective, "[a] subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion."  *Chapman*, 229 F.3d at 1034.  Here, Bushway offered a clear and

---

[5]  Bushway explained his rankings of the other pest controllers as follows:  (1) Fox had a degree in horticulture and was better than any other pest controller in identifying and addressing pest and turf problems;  (2) Bailey was very good at L&O work and enjoyed doing it, and he also willingly helped other pest controllers, including Loberger, with L&O work in their respective zones;  (3) Nowaczyk similarly enjoyed doing L&O work, maintained his zone well, and willingly helped others.

11

reasonably specific factual basis for his subjective evaluations of the pest controllers. As developed more fully below, Bushway connected his assessments to specific facts or observations that were sufficient to provide Appellants a full and fair opportunity to establish pretext. *See id.* These reasons are also ones that might motivate a reasonable employer because they relate primarily to job performance. *See id.* at 1033-34.

The burden shifted back to Appellants to show that these reasons were pretextual. *Alvarez*, 610 F.3d at 1265. We emphasize that our inquiry into pretext centers upon the employer's beliefs, not the employee's beliefs as to his performance or even as to "reality as it exists outside of the decision maker's head." *Id.* at 1266; *Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997).

Appellants first contend that the district court misapplied the summary-judgment standard by ignoring evidence that undermined Bushway's reasoning. In addressing pretext, the court stated, "Loberger preferred to work on paved areas over other zones. Miller was not a hard worker who sometimes had trouble getting along well with others. Both Plaintiffs acknowledged these things. Plaintiffs offer no evidence that these reasons are pretexual." D.E. 83 at 7. Appellants assert that these "facts" were disputed.

Upon our review of the record, we do note some discrepancies. For example, while Miller acknowledged taking certain actions cited by Bushway for

12

why he thought Miller was not a hard worker, such as socializing with others on the job, Miller did not acknowledge that he was not a "hard worker."  But these discrepancies do not tend to show that Bushway did not believe his reasons for his ranking of the pest controllers or otherwise indicate that Bushway's stated reasons were pretextual.  In any case, we are not bound by any findings of fact made by the district court.  *See Feliciano*, 707 F.3d at 1252 n.5 ("[O]n *de novo* review of a summary judgment ruling, we may not only affirm on any ground supported by the record, but may also choose to disregard a district court's determination of the facts for summary judgment purposes and determine those facts ourselves." (citations omitted)).

Viewing the evidence in the light most favorable to Appellants and drawing all reasonable inferences in their favor, Appellants have failed to establish that Bushway's reasons are implausible, inconsistent, incoherent, or otherwise unworthy of credence.  *See Combs*, 106 F.3d at 1538.

Much of the evidence cited by Appellants either focuses on their own beliefs about their job performance or simply fails to meet the reasons head on and rebut them.  *See Chapman*, 229 F.3d at 1030; *Wilson,* 376 F.3d at 1088.  For example, the fact that Loberger and Miller were certified in L&O work does not show that they did not perform L&O work as well as the other pest controllers.  Likewise, the job description's listing of L&O work as one of five mandatory certifications does

not rebut Bushway's statement that most of the pest control work on the Base is L&O work. Although both Loberger and Miller testified that they got along well with others at work, this does not show that Bushway did not find Miller to be disrespectful, particularly when Bushway's opinion was linked to a specific incident not disputed by Miller. Similarly, while Miller may not have received any discipline or reprimands while employed by Del-Jen, Miller does not dispute the specific instances cited by Bushway in support of his assessment that Miller was not a hard worker, including that Miller tended to socialize with others, making him inefficient compared to the other pest controllers, and that Bushway received complaints about areas for which Miller was responsible. Overall, this evidence does not show that Bushway's reasons were false or unworthy of credence.

Appellants also contend that they should have been ranked higher because they had superior qualifications and experience compared to the other pest controllers. And they assert that they both had a required termite certification that Fox did not. However, "a plaintiff cannot prove pretext by simply arguing or even by showing that he was better qualified than the [person] who received the position he coveted." *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007) (internal quotation marks omitted); *Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006). Instead, "a plaintiff must show that the disparities between the successful applicant's and his own

14

qualifications were of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." *Springer*, 509 F.3d at 1349 (internal quotation marks omitted).

Here, Bushway testified that a termite certification was not necessary on the Base, even if it was listed as a requirement. This fact was not disputed. In addition, Fox had been employed by Del-Jen as a pest controller, and Fox was the only pest controller with a degree in horticulture. In short, the disparities in qualifications were not so significant that no reasonable person could have chosen Fox over the plaintiffs. *See id.*

Finally, Appellants argue that Bushway's comment about "longevity" shows that his reasons are simply after-the-fact rationalizations that did not actually motivate his decisions at the time.[6] After J&J hired Nowaczyk, Bushway told Loberger and Miller, "It will be a hard fight for your job because you will be retiring next year . . . and we want someone with longevity." He did not explain

---

[6] Appellants highlight various other purported comments by Bushway (that J&J wanted younger employees who would "stick around for a while"; that Appellants did not fit in with the notion of retaining long-term employees; and that J&J was aware of Miller's age), but, after a review of the pertinent deposition transcripts, we find that these alleged comments are merely Appellants' various characterizations of, or inferences from, Bushway's comment.

Appellants also point to a comment Bushway made to Loberger's wife about Loberger's getting older and being bitten by bugs on the job more often. However, Appellants did not argue at summary judgment that this comment was relevant to their claims of age discrimination. Therefore, we decline to consider this comment for the first time on appeal. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (holding that issues or arguments not raised in the district court and raised for the first time on appeal will not be considered). In any event, the unrelated comment, made months before the hiring decisions, does not change the result in this case.

the reasons described above.  Appellants contend that it is reasonable to infer from this comment and the circumstances that Bushway ranked them last because of their age.

Appellants acknowledge that "the term 'longevity' used independently does not necessarily have a discriminatory connotation."  (Appellants Br. at 22).  And an employer does not violate the ADEA if his adverse employment decision is motivated by factors other than age even if those factors are correlated with age, such as pension status.  *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 611, 113 S. Ct. 1701, 1706 (1993).    Nonetheless, we agree with Appellants that, in the circumstances of this case, "longevity" was tied to Appellants' age.  Therefore, we consider the comment to be circumstantial evidence of an impermissible intent. *See Ross v. Rhodes Furniture, Inc.*, 146 F.3d 1286, 1291-92 (11th Cir. 1998).

But while the comment is circumstantial evidence of Bushway's discriminatory animus, Appellants have not presented sufficient other evidence (including their *prima facie* case) by which a reasonable jury could conclude that Bushway's explanation was pretext for discrimination.  *See id.* at 1292.  As explained above, it is the plaintiffs' burden to show that the proffered reasons did not actually motivate the challenged employment decisions.  *See Combs*, 106 F.3d at 1538.    And "[i]f the employer proffers more than one legitimate, nondiscriminatory reason, the plaintiff must rebut each of the reasons to survive a

16

motion for summary judgment." *Crawford v. City of Fairburn, Ga.*, 482 F.3d 1305, 1308-09 (11th Cir. 2007); *see also Chapman,* 229 F.3d at 1024-25. Here, Appellants have not offered any "significantly probative" evidence rebutting Bushway's reasons for ranking the pest controllers as he did. *See Anderson*, 477 U.S. at 249-50, 106 S. Ct. at 2511; *Combs*, 106 F.3d at 1538. As a result, Appellants have failed to establish that the reasons were pretext for discrimination. *See Crawford*, 482 F.3d at 1309 ("[Plaintiff] erroneously argues that evidence of a discriminatory animus allows a plaintiff to establish pretext without rebutting each of the proffered reasons of the employer."); *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 516, 113 S. Ct. 2742, 2752 (1993) (pretext means "*both* that the reason was false, *and* that discrimination was the real reason").

Outside of Bushway, Appellants cite no other evidence of a discriminatory motive on the part of J&J or Del-Jen. They claim that their interviews with J&J were perfunctory, but without comparison evidence showing that their interviews differed substantially from those of other pest controllers, Appellants' speculation regarding a discriminatory motive behind the interviews is insufficient.

In short, Loberger and Miller failed to establish a genuine issue of material fact that "but for" their age, they would have been hired by J&J or would have been ranked higher by Bushway.[7] *See Mazzeo,* 746 F.3d at 1270.

---

[7] To the extent Appellants also argue that there is a "convincing mosaic of circumstantial

17

**B.**

Loberger and Miller argue that they created genuine issues of material fact on their claims of age discrimination and retaliation based on J&J's failure to hire them in September 2013. They contend that pretext is shown by the fact that they were more qualified for the position than Spragg.

Under the ADEA, it is unlawful for an employer to retaliate against any applicant for employment because such applicant has made a charge of discrimination. 29 U.S.C. § 623(d). The plaintiff ultimately must establish that the protected activity was a "but-for" cause, rather than simply a motivating factor, of the challenged employer action. *See Univ. of Texas Sw. Med. Ctr. v. Nassar,* 133 S. Ct. 2517, 2534 (2013).

To establish a *prima facie* case of retaliation under the ADEA, a plaintiff must prove that (1) he engaged in a statutorily protected expression, (2) he suffered a materially adverse action, and (3) there was some causal link between the two events. *Hairston v. Gainesville Sun Pub. Co.,* 9 F.3d 913, 919 (11th Cir. 1993). We apply the same burden-shifting framework described above.

The district court did not address Appellants' discrimination claims arising from the September 2013 failure to hire and found that Appellants failed to

---

evidence" that would allow a jury to infer intentional discrimination, *see Smith v. Lockheed–Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir.2011), we disagree.

18

establish a causal connection for their claims of retaliation.  We assume without deciding that Appellants established a *prima facie* case of both retaliation and discrimination based on failure to hire in September 2013.  However, Loberger and Miller have not shown that J&J's non-discriminatory and non-retaliatory reasons were false or that discrimination or retaliation was the real reason that they were not hired.  Again, Appellants' claims are based on Bushway's recommendation.

Bushway explained that he recommended Spragg because he felt Spragg would get along well with him and other employees and because Spragg had more pest-control experience than Loberger or Miller.  Appellants contend that this explanation is pretextual because Spragg did not have two of the five mandatory certifications.  Appellants, in contrast, had all of the required certifications.

We conclude that Appellants have failed to show that Bushway's reasons were pretextual.  Bushway's undisputed testimony was that the two certifications Spragg did not have were generally obtained after an individual was hired, and that both Loberger and Miller had obtained these same certifications after their hire by Del-Jen.  Appellants also do not contest that Spragg had more experience in pest control.  Therefore, the disparities between Spragg's and Appellants' qualifications were not so great that a reasonable fact-factfinder could infer that Bushway and J&J did not actually believe that Spragg was better qualified.  *See Springer*, 509 F.3d at 1349; *Brooks*, 446 F.3d at 1163.

Appellants also point to Bushway's "longevity" comment, but, again, reliance on the comment is insufficient because Appellants have not rebutted the reasons Bushway gave for recommending Spragg. *See Crawford*, 482 F.3d at 1309. In addition, the comment is less probative of Bushway's intent regarding the September 2013 claims than it is for the October 2012 claims because it was not contemporaneous with the decision to hire Spragg.

In short, we affirm for different reasons the district court's grant of summary judgment on Appellants' claims arising from the September 2013 failure to hire. *See Feliciano*, 707 F.3d at 1252.

## V.

We affirm the district court's grant of summary judgment in favor of Del-Jen and J&J.

**AFFIRMED.**