[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-12936
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 13, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-00032-CV-ORL-31-GJK

MICHAEL WILLIAMSON,

                                                        Plaintiff-Appellant,

versus

ADVENTIST HEALTH SYSTEM/SUNBELT, INC.,
A Florida Non Profit Corporation,
SOUTHWEST VOLUSIA HEALTHCARE CORPORATION,
A Florida Non Profit Corporation,
d.b.a. Florida Hospital Fish Memorial,
MEMORIAL HEALTH SYSTEMS, INC.,
A Florida Non Profit Corporation, d.b.a.
Florida, Hospital - Oceanside,
MEDICAL STAFFING NETWORK, INC.,
a Foreign for Profit Corporation,

                                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(April 13, 2010)

Before DUBINA, Chief Judge, BLACK and PRYOR, Circuit Judges.

PER CURIAM:

Appellant Michael Williamson appeals from the district court order granting summary judgment in favor of all defendants on his race discrimination in employment claims, brought under 42 U.S.C. § 2000e-2 and 42 U.S.C. § 1981. In a two-count complaint, Williamson, a Jamaican-born black male, charged that he suffered race-based discrimination in employment at two separate hospitals where he worked as a temporary licensed practical nurse. After reviewing the briefs and the record, we affirm the district court order granting summary judgment in favor of the defendants.

I.

Pursuant to his contract with defendant Medical Staffing Network, Inc. ("MSN"), Williamson received temporary nursing assignments with defendants Florida Hospital-Oceanside ("Oceanside") and Florida Hospital Fish Memorial ("Fish"), in June and July 2006. Oceanside and Fish are subsidiaries of Advent Health System/Sunbelt, Inc. ("AHS"). Williamson charged in his complaint that Oceanside and Fish discriminated against him because of his race, and sued each of the defendants for the alleged violations of federal law.

Williamson contends that Oceanside effectively terminated his employment

2

after he refused to perform janitorial duties. He contends he was the subject of a racial epithet before Oceanside refused his future assignments to the hospital. Williamson contends that supervisors at Fish commented on his race and national origin more than once, and ultimately declined further assignments for him at the hospital because of his admitted failure to procure prescribed medicine for a patient during his shift. Williamson asserts that other permanent, non-minority nurses were not terminated when their performance was deficient.

Williamson alleges that AHS, as the controlling shareholder of subsidiaries Oceanside and Fish, exercised control over these entities and should be liable for their discriminatory conduct. The record evidence, however, consists only of sworn statements by AHS's in-house counsel and vice president of human resources, stating that even though AHS is the corporate parent of both Oceanside and Fish, the hospitals operate independently. They have their own corporate officers, board of directors, and human resources departments. Williamson also argues that MSN is liable for the racial discrimination in its role as a temporary staffing agency.

## II.

We review a district court order granting summary judgment *de novo*, viewing all of the facts in the record in the light most favorable to the non-moving party. *Brooks v. County Comm'n of Jefferson County, Ala.*, 446 F.3d 1160,

3

1161–62 (11th Cir. 2006).  Summary judgment is appropriate where the moving party demonstrates, through "pleadings, the discovery and disclosure materials on file, and any affidavits," that no issue of material fact exists, and it is "entitled to judgment as a matter of law."  Fed. R. Civ. P 56(c).

## III.

Williamson first argues that MSN is liable for its role in the discrimination inflicted by Fish and Oceanside under a "cat's paw" theory.  We have held that a "cat's paw" theory of recovery may apply when a biased actor recommends that an adverse employment action be taken against an employee, but the biased actor is not the ultimate decision-maker.  *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999).  In such a situation, the employee must provide evidence that the recommender's alleged discriminatory animus directly caused the decision-maker to take adverse employment action against its employee.  *Id.* at 1331.

We conclude from the record that the district court did not err in granting summary judgment in MSN's favor.  Williamson testified that MSN did not give him any more assignments after Oceanside and Fish requested that he not be assigned to their respective hospitals again, showing that MSN passively acceded to the decisions of Oceanside and Fish in making its own adverse employment decision regarding Williamson.  An application of the theory could only be made,

4

however, after it has been established that either Oceanside or Fish (or both) discriminated against Williamson. That is the essence of a "cat's paw" theory. Because Williamson failed to establish a *prima facie* case of racial discrimination against either Oceanside or Fish, as we conclude below, MSN was entitled to summary judgment on Williamson's "cat's paw" theory. As for direct liability, the district court properly determined that Williamson failed to provide any evidence that MSN itself discriminated against him, and we therefore affirm that ruling.

Williamson next argues that the district court erred in ruling as a matter of law that AHS could not be held liable for the alleged racial discrimination he suffered at Oceanside and Fish. He argues that AHS was his employer under the "economic realities" test, and that it could be held liable for interfering with his contract with MSN because AHS controlled Oceanside and Fish.

In determining whether two businesses should be treated as a joint employer for Title VII purposes, we apply the standards promulgated by the National Labor Relations Board ("NLRB"), which include: "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *McKenzie v. Davenport-Harris Funeral Home*, 834 F.2d 930, 933 (11th Cir. 1987). We have separately adopted the "economic realties" test to determine whether a Title VII plaintiff is an employee of an

5

defendant business entity. *Cuddeback v. Fla. Dep't of Educ.*, 381 F.3d 1230, 1234 (11th Cir. 2004).

The district court's determination that AHS did not exercise control over Oceanside or Fish sufficient to impute liability for their alleged discriminatory actions is fully supported by the undisputed factual record. Williamson's bare assertions of corporate control do not negate the actual record evidence to the contrary. The undisputed facts preclude a finding that AHS was Williamson's employer under the NLRB standard or the "economic realities" test. They also establish Oceanside and Fish were operating as independent decision-makers in personnel matters, precluding any argument for liability against AHS under a "cat's paw" theory. Summary judgment in AHS's favor was therefore proper.

Williamson lastly argues that he provided direct and circumstantial proof of racial discrimination by Oceanside and Fish, and that the district court therefore erred in granting summary judgment in their favor. As direct evidence, Williamson cites an Oceanside supervisor calling him a "nigger" after he refused to perform certain assigned duties, and a Fish supervisor's references to his Jamaican heritage. Williamson relies on this same evidence as proof, under a circumstantial case analysis, that the hospitals' proffered non-discriminatory reasons were pretextual.

Title VII makes it unlawful for an employer "to discharge any individual, or

6

otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). When a plaintiff uses circumstantial evidence in an attempt to prove discrimination or retaliation under Title VII, we may apply the burden shifting approach articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817 (1973). *Crawford v. Carroll*, 529 F.3d 961, 975–76 (11th Cir. 2008). Under the *McDonnell Douglas* framework, a plaintiff has the initial burden to establish a *prima facie* case of discrimination. *Crawford*, 529 F.3d at 976. To establish a *prima facie* case of discrimination under Title VII, a plaintiff must show that "(1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was . . . treated less favorably than a similarly-situated individual outside his protected class." *Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003). "To show that employees are similarly situated, the plaintiff must show that the employees are similarly situated in all relevant respects . . . ." *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003) (internal quotation marks omitted).

Once the plaintiff has made out the elements of the *prima facie* case, the employer must articulate a non-discriminatory basis for its employment action.

7

*Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir.

1999). If non-discriminatory reasons are identified, the plaintiff must then show

that the proffered reasons were pretextual. *Id.*; *Crawford*, 529 F.3d at 976.

Specifically, to survive summary judgment, the employee must come forward with

evidence sufficient to permit a reasonable fact finder to conclude that the legitimate

reasons given by the employer were not its true reasons, but were a pretext for

discrimination. *Chapman v. AI Transp.,* 229 F.3d 1012, 1024 (11th Cir. 2000) (*en

banc*).

A plaintiff may, however, establish a *prima facie* case of discrimination

through direct evidence. *Damon*, 196 F.3d at 1358. We have defined direct

evidence "as evidence which reflects a discriminatory or retaliatory attitude

correlating to the discrimination or retaliation complained of by the employee." *Id.*

(internal quotation marks omitted). "[T]he evidence must indicate that the

complained-of employment decision was *motivated* by the decision-maker's [racial

animus]." *Id.* at 1358–59 (emphasis in original). To qualify as direct evidence of

discrimination, we require that a biased statement by a decision-maker be made

concurrently with the adverse employment event, such that no inference is

necessary to conclude that the bias necessarily motivated the decision. *See id.* at

1359.

The district court properly granted summary judgment in Oceanside's favor. Under our precedent, the Oceanside supervisor's alleged racial epithet does not constitute direct evidence of discrimination. A biased statement, separate in time from the employment decision under challenge, is not direct evidence of discrimination. *See id.* Absent this level of proof, the fact-finder is asked to infer that the racially-biased attitude revealed by the statement was what motivated the prior (or subsequent) employment decision, and the evidence is not direct evidence.

The district court's summary judgment ruling as to Oceanside was likewise correct under a circumstantial case analysis. Williamson's refusal to perform the duties to which he was assigned provided a legitimate, non-discriminatory reason for Oceanside to not request him again, and Williamson provided nothing to show that this proffered reason was unworthy of credence, or otherwise pretextual. Moreover, Williamson did not offer any evidence that a non-black temporary licensed practical nurse or registered nurse was retained after refusing a staffing assignment.

The district court's summary judgment ruling as to Fish also was correct. The evidence primarily relied upon by Williamson regarding Fish consisted of references or jokes by a supervisor about his Jamaican heritage, occurring both

before and after his final shift there. Even if considered race-based, however, these alleged comments do not rise to the level of direct evidence under our precedent, as the fact-finder would have to infer from these comments that the supervisor's inappropriate racial attitudes motivated her decision to request that Williamson no longer be assigned to Fish.

For purposes of a circumstantial analysis, the critical medication error, which Williamson admitted to during his final shift at Fish, provided a legitimate, non-discriminatory reason for Fish to ask that he not be assigned there again. Williamson provided nothing to show that this proffered reason was unworthy of credence or was pretextual. Williamson also failed to show that any similarly-situated employee outside of his protected class was treated differently under similar circumstances. We conclude that summary judgment in Fish's favor was therefore appropriate.

IV.

For the aforementioned reasons, we affirm the district court order granting summary judgment in favor of the defendants on all of Williamson's claims.

**AFFIRMED.**